IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| W. J.,[1] | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 21-cv-126-RJD[2] |
| | ) |
| COMMISSIONER of SOCIAL SECURITY, | ) |
| | ) |
| Defendant. | ) |

### MEMORANDUM AND ORDER

**DALY, Magistrate Judge:**

In accordance with 42 U.S.C. § 405(g), Plaintiff seeks judicial review of the final agency decision denying his application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) pursuant to 42 U.S.C. § 423.

### Procedural History

Plaintiff applied for SSI and DIB on August 30, 2019 (Tr. 166-179). Plaintiff's application was initially denied on November 21, 2019 and subsequently denied on reconsideration on January 30, 2020 (Tr. 105-108, 112-118). Upon Plaintiff's request for hearing, a hearing was held before ALJ William Wallis on August 20, 2020 (Tr. 30). The ALJ issued an unfavorable decision on October 16, 2020 (Tr. 12-25). The Appeals Council denied review, and the decision of the ALJ became the final agency decision (Tr. 1). Administrative remedies have been exhausted and a timely complaint was filed in this Court.

---

[1] In keeping with the court's practice, Plaintiff's full name will not be used in this Memorandum and Order due to privacy concerns.  See, Fed. R. Civ. P. 5.2(c) and the Advisory Committee Notes thereto.

[2] Pursuant to 28 U.S.C. §636(c), this case was assigned to the undersigned for final disposition upon consent of the parties (Doc. 12).

**Issues Raised by Plaintiff**

Plaintiff raises the following issues:

1. Did the ALJ comply with the Regulations when he failed to identify how persuasive the opined physical limitations contained in the treating provider's statement were?

2. Did the ALJ comply with the requirements of SSR 16-3p in the evaluation of Plaintiff's subjective reports?

**Applicable Legal Standards**

To qualify for DIB or SSI a claimant must be disabled within the meaning of the applicable statutes[3]. Under the Social Security Act, a person is disabled if he has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a).

To determine whether a plaintiff is disabled, the ALJ considers the following five questions in order: (1) Is the plaintiff presently unemployed? (2) Does the plaintiff have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the plaintiff unable to perform his former occupation? and (5) Is the plaintiff unable to perform any other work? 20 C.F.R. § 404.1520.

An affirmative answer at either step three or step five leads to a finding that the plaintiff is disabled. A negative answer at any step, other than at step three, precludes a finding of disability.

---

[3] The statutes and regulations pertaining to DIB are found at 42 U.S.C. § 423, et seq., and 20 C.F.R. pt. 404. The statutes and regulations pertaining to SSI are found at 42 U.S.C. §§ 1382 and 1382c, et seq., and 20 C.F.R. pt. 416. As is relevant to this case, the DIB and SSI statutes and regulations are identical. Furthermore, 20 C.F.R. § 416.925 detailing medical considerations relevant to an SSI claim, relies on 20 C.F.R. Pt. 404, Subpt. P, the DIB regulations. Most citations herein are to the DIB regulations out of convenience.

The plaintiff bears the burden of proof at steps one through four. Once the plaintiff shows an inability to perform past work, the burden then shifts to the Commissioner to show that there are jobs existing in significant numbers in the national economy which plaintiff can perform. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001).

This Court reviews the Commissioner's decision to ensure that the decision is supported by substantial evidence and that no mistakes of law were made. It is important to recognize that the scope of review is limited. "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. § 405(g). Thus, this Court must determine not whether plaintiff was, in fact, disabled at the relevant time, but whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). This Court uses the Supreme Court's definition of substantial evidence, i.e., "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted).

In reviewing for "substantial evidence," the entire administrative record is taken into consideration, but this Court does <u>not</u> reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). However, while judicial review is deferential, it is not abject; this Court does not act as a rubber stamp for the Commissioner. *See Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010), and cases cited therein.

### The Decision of the ALJ

In his opinion, ALJ Wallis followed the five-step analytical framework described above.

The ALJ determined that Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2024. The ALJ found that while Plaintiff engaged in substantial gainful activity from November 20, 2018 until May 18, 2019, there had been a continuous 12-month period during which Plaintiff did not engage in substantial gainful activity. The ALJ indicated his findings address the period since May 18, 2019 during which Plaintiff did not engage in substantial gainful activity.

The ALJ found that Plaintiff has a severe impairment of multiple sclerosis, but determined this impairment does not meet or equal a listed impairment.

The ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform light work with the following exceptions and/or qualifications: lifting, carrying, pushing, or pulling 20 pounds occasionally and 10 pounds frequently with the dominant right upper extremity; lifting, carrying, pushing, or pulling five pounds occasionally with the non-dominant left upper extremity; standing or walking six hours in an eight-hour workday; sitting six hours in an eight-hour workday; no climbing ladders, ropes, or scaffolds; frequently climbing ramps or stairs; and never working at unprotected heights or dangerous moving machinery.

Based on the testimony of a vocational expert ("VE"), the ALJ found Plaintiff could not do his past relevant work as a postal carrier. However, he was not disabled because he was able to do other jobs that exist in significant numbers in the national economy.

## The Evidentiary Record

The Court reviewed and considered the entire evidentiary record in formulating this Memorandum and Order. The following summary of the record is directed to Plaintiff's arguments.

1. **Agency Forms**

Plaintiff was born in 1972 and claimed his alleged disability onset date was November 20, 2018 (Tr. 166). In his disability report dated August 30, 2019, Plaintiff said he was disabled because of multiple sclerosis (Tr. 192). Plaintiff indicated his medical condition caused him to make changes to his working conditions on November 20, 2018, and he stopped working May 11, 2019 (Tr. 192).

2. **Evidentiary Hearing**

Plaintiff was represented by an attorney at the August 20, 2020 hearing (Tr. 30). Plaintiff testified he experiences generalized weakness due to MS, which is more significant when he is stressed (Tr. 44). Plaintiff has a tremor in his left hand, and generally favors his right side over his left side as his left side is weaker (Tr. 46). Plaintiff explained he had difficulty with his memory, but is better able to recall things that are repetitive in nature (Tr. 44). Plaintiff testified he experiences dizzy spells and headaches, but it eventually gets better if he lays down for a "little while" (Tr. 47).

With regard to household duties, Plaintiff lives alone and explained he completes household chores "slowly but surely" (Tr. 48). Plaintiff explained that he can sweep, but he will then take a break for two to three days before he can mop (Tr. 48). Plaintiff also needs to take breaks while mowing his lawn with a riding lawn mower (Tr. 49). Plaintiff used to bowl about once a week, but he has not bowled recently (Tr. 48-49).

A vocational expert (VE) also testified. The VE testified that a person with Plaintiff's RFC assessment could not do Plaintiff's past work, but he could do other light, unskilled work such as a production worker, unskilled hand packer, or unskilled cleaner (Tr. 56-57). The VE

also testified that if an individual missed work on a regular or continuing basis at even two days a month because of health conditions, there would not be any work for them in the national economy (Tr. 57). Similarly, if an individual with Plaintiff's RFC assessment would require additional breaks during the day resulting in approximately 20 percent off-task behavior, said breaks would not be tolerated and the individual would soon be terminated (Tr. 58).

### 3. Relevant Medical Records

Plaintiff was seen by Dr. Riaz Naseer, a neurologist, on January 15, 2018 presenting with a ten-year history of multiple sclerosis (Tr. 284-288). Plaintiff complained of fatigue and cramping (Tr. 284-285). The physical exam findings were normal (Tr. 286). A brain MRI was ordered and completed on January 30, 2018 (Tr. 287, 307). The MRI showed lesions in the brain and spinal cord consistent with MS (Tr. 307).

Plaintiff was again seen by Dr. Naseer on February 19, 2018 and reported his symptoms as "moderate" and "chronic" (Tr. 289). Plaintiff reported muscle weakness and muscle cramps; however, his physical exam findings were normal (Tr. 290-291). Plaintiff was to begin taking Tecfidera (Tr. 292). Plaintiff was seen by Dr. Naseer for a follow-up appointment on September 10, 2018 wherein he complained of blurred vision and headaches (Tr. 294). The physical exam noted abnormal findings regarding Plaintiff's weight and right facial asymmetry (Tr. 296). During another examination with Dr. Naseer on March 15, 2019, Plaintiff continued to complain of blurred vision, as well as dizziness and muscle pain (Tr. 298). The physical exam findings were normal (Tr. 300). Plaintiff again complained of dizziness during an examination with Dr. Naseer on July 1, 2019 (Tr. 303). The physical exam findings were all normal aside from a notation that Plaintiff was overweight (Tr. 305).

Plaintiff also sought treatment at the MS clinic at the Veteran's Administration. On November 9, 2018, Plaintiff presented at the VA to establish as a new patient (Tr. 384). Plaintiff complained of dizziness and blurred vision due to his MS (Tr. 385). On February 4, 2019, Plaintiff was again seen in the MS clinic at the VA (Tr. 419). Plaintiff reported that he had issues with his energy levels and experienced "dizzy spells" and blurred vision, but otherwise had not noticed any active disease (Tr. 419). Plaintiff said he had taken the entire previous week off of work due to the dizzy spells, but was overall doing better because of his medication, Tecfidera (Tr. 419). Plaintiff again complained of dizziness and blurred vision during an examination on April 26, 2019 (Tr. 381). On April 30, 2019, Plaintiff was seen by a VA optometrist and was assessed with optic atrophy, dry eyes, and refractive error with presbyopia (Tr. 408-412).

On September 9, 2019, Plaintiff was seen in the MS clinic at the VA for physical therapy screening and reported worsening MS that affected his ability to work (Tr. 393-94). Plaintiff reported he had only worked one or two weekends during the calendar year due to his inability to hold mail with his left hand, blurry vision that affected his ability to drive, and fatigue (Tr. 394). He also indicated he experienced random episodes of numbness and tingling leading to left foot drag and unsteadiness (Tr. 394). Plaintiff was seen on November 22, 2019 for a follow-up appointment and no abnormalities were noted on physical examination (Tr. 383). Plaintiff, however, reported that he had been experiencing weakness and paresthesia for the past two months (Tr. 377).

4.  **Riaz Naseer, M.D. Letter Dated April 9, 2019**

In a letter dated April 9, 2019, Dr. Naseer indicated he had been treating Plaintiff for "several years" and in his medical opinion Plaintiff "should be on partial disability" (Tr. 268).

Dr. Naseer further writes that Plaintiff "is able to work his normal hours, but may need to take several breaks so that he does not get stressed, therefore it may take him longer." (Tr. 268).

### 5. Consultative Examination – Dr. Yasuo Ishida

Yasuo Ishida, M.D. performed an internal medicine consultative examination on Plaintiff on November 7, 2019 (Tr. 317-320). Plaintiff reported he had been a letter carrier for 18 years, but had not worked full-time for six months. Plaintiff indicated he was trying to return to work and was planning to return to work full-time the following day. Dr. Ishida noted Plaintiff was currently taking Amandtadine and Tecfidera. On examination, Dr. Ishida found Plaintiff's gait and tandem walk was normal. Physical examination findings were normal, including grip strength and vision. With regard to his neurologic exam, Dr. Ishida noted Plaintiff's entire left side, including face, torso, and back tactile and pinch sensation was increased. The right side was +2 and normal, the left side was +3, except the anterior aspect of the left forearm where the sensation was +1. Dr. Ishida noted there was no fatigue and no tremor. Dr. Ishida's clinical impressions included hypertension, previous diagnosis of multiple sclerosis, and left side hemiparesthesia.

### 6. State Agency Consultant – Torra Jones, M.D.

On January 29, 2020, Torra Jones, M.D., reviewed Plaintiff's treatment records and found that Plaintiff had a severe medical impairment that did not meet or equal a listing (Tr. 79-84). Dr. Jones found Plaintiff had exertional limitations and could: occasionally lift and/or carry 20 pounds; frequently lift and/or carry 10 pounds; stand and/or walk about six hours in an eight-hour workday; sit for about six hours in an eight-hour workday; and never climb ladders, ropes, and scaffolds (Tr. 85-86).

**Analysis**

I. **ALJ's Consideration of Dr. Naseer's April 2019 Statement**

First, Plaintiff contends ALJ Wallis failed to assess the persuasiveness of the opinions of Dr. Naseer, Plaintiff's treating provider. More specifically, Plaintiff complains the ALJ failed to evaluate Dr. Naseer's statements that Plaintiff "should be on partial disability" and that although Plaintiff is able to work his normal hours, he "may need to take several breaks so that he does not get stressed." Plaintiff explains the ALJ only addressed the portion of Dr. Naseer's statement that Plaintiff "should be on partial disability," dismissing it as a statement on an issue reserved to the Commissioner, but failed to evaluate the remainder of the statement that provided a medical opinion.

Pursuant to 20 C.F.R. § 1520b(c), statements on issues reserved to the Commissioner is evidence that is inherently neither valuable nor persuasive and, thus, no analysis need be provided about how it was considered in reaching a decision. Defendant contends the ALJ properly refused to consider Dr. Naseer's statement because his conclusion regarding partial disability related to an issue reserved for the Commissioner and Dr. Naseer's speculative statement regarding work breaks does not satisfy the regulatory definition of a medical opinion.

The Regulations define a medical opinion as "a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions" in your ability to perform physical, mental, and other demands of work activities, and adapt to environmental conditions. 20 C.F.R. § 404.1513(a)(2). Under this framework, Dr. Naseer's statement must satisfy two elements: (1) it must be a statement from a medical source about what Plaintiff could still do despite his limitations; and (2) it must express

Plaintiff's impairment-related limitations or restrictions in terms of his ability to perform certain work demands. The Court finds both elements met in this instance. Dr. Naseer is clearly a medical source and his statement indicates Plaintiff "is able to work his normal hours." This is a statement referring to Plaintiff's capabilities despite his impairments. Dr. Naseer also indicates certain impairment-related limitations Plaintiff suffers — specifically, that Plaintiff may need to take several breaks so that he does not get stressed — will affect his work demands insofar as it may take him longer to complete his work. This statement contemplates vocationally relevant functional limitations listed in the regulation.

The Court further finds the ALJ's failure to consider Dr. Naseer's April 2019 statement did not constitute harmless error as the decision of the ALJ did not consider the issue of Plaintiff's suffering from fatigue or stress that would require frequent breaks. *See Wallender v. Saul*, Case No. 20-CV-808-SCD, 2021 WL 734098, at *7 (E.D. Wis. Feb. 25, 2021) (finding the ALJ did not fail to consider an entire line of evidence contrary to her conclusion in failing to consider a physician's statement because the ALJ carefully and thoroughly considered the underlying medical conditions discussed by the physician, and explained why those impairments did not warrant any limitations beyond the RFC the ALJ assessed).

## II. ALJ's Evaluation of Plaintiff's Alleged Symptoms

Plaintiff contends the ALJ erred in the evaluation of his allegations of weakness and fatigue due to his MS.

ALJs use a two-step process for evaluating a claimant's impairment-related symptoms. SSR 16-3p, 2017 WL 5180304, at *1. First, the ALJ must "determine whether the individual has a medically determinable impairment (MDI) that could reasonably be expected to produce the

individual's alleged symptoms. *Id.* at *3. Second, the ALJ must "evaluate the intensity and persistence of an individual's symptoms such as pain and determine the extent to which an individual's symptoms limit his or her ability to perform work-related activities." *Id.* at *4.

"In considering the intensity, persistence, and limiting effects of an individual's symptoms, [the ALJ must] examine the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.*

Reviewing courts "will overturn an ALJ's decision to discredit a claimant's alleged symptoms only if the decision is 'patently wrong,' meaning it lacks explanation or support." *Cullinan v. Berryhill*, 878 F.3d 598, 603 (7th Cir. 2017) (quoting *Murphy v. Colvin*, 759 F.3d 811, 816 (7th Cir. 2014). The findings of the ALJ as to the accuracy of the plaintiff's allegations are to be accorded deference, particularly in view of the ALJ's opportunity to observe the witness. *Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000). However, Social Security regulations and Seventh Circuit cases "taken together, require an ALJ to articulate specific reasons for discounting a claimant's testimony as being less than credible, and preclude an ALJ from 'merely ignoring' the testimony or relying solely on a conflict between the objective medical evidence and the claimant's testimony as a basis for a negative credibility finding." *Schmidt v. Barnhart*, 395 F.3d 737, 746-747 (7th Cir. 2005), and cases cited therein.

In his brief, Plaintiff asserts he testified to weakness and flare in his symptoms, and reported he had to slow down significantly as a result of his MS. Plaintiff asserts that while the ALJ provided some reasons for discounting Plaintiff's reports concerning his MS, the ALJ's

reasons for doing so were not supported. First, Plaintiff suggests the ALJ's citation to his normal physical examination findings, such as normal gait and range of motion, have little to do with his symptoms of fatigue and weakness associated with his MS. Plaintiff further contends the ALJ cherry-picked the medical evidence in failing to acknowledge many of the findings consistent with left-sided weakness. Defendant disagrees, asserting the ALJ noted both normal and abnormal examination findings, discussed the findings of Dr. Yasuo Ishida, and considered Plaintiff's daily activities in reaching his decision and RFC.

The Court agrees with Plaintiff that the ALJ failed to adequately consider Plaintiff's complaints of fatigue[4] in his opinion; however, the Court is not convinced the ALJ's recitation of certain normal physical examination findings was inappropriate. On this point made by Plaintiff, the Court disagrees and finds that neither Plaintiff's counsel nor this Court are qualified to conclude the normal examination findings set forth in the record and cited by the ALJ do not support a finding of fatigue. Placing this argument aside, the Court agrees with Plaintiff that the ALJ failed to support his discrediting of Plaintiff's complaints of fatigue and resulting need for regular breaks based on a full evaluation of the case record.

First, Plaintiff's medical records reveal repeated complaints of fatigue from January 2018 through November 2019. Further, as mentioned above, the ALJ declined to address Dr. Naseer's opinion that Plaintiff may need to take several breaks throughout a workday to avoid becoming stressed. This opinion certainly lends support to Plaintiff's subjective statements concerning his fatigue and ability to complete tasks in a timely manner, and an analysis of Plaintiff's credibility

---

[4] Insofar as Plaintiff combines his discussion of fatigue with weakness and seems to address these complaints interchangeably, the Court finds the ALJ adequately discussed Plaintiff's complaints of muscle weakness and said complaints were adequately addressed in the RFC determination. The Court's discussion, therefore, focuses on Plaintiff's complaints of fatigue.

Page **12** of **15**

ought to have considered the same.

The ALJ also based his decision on Plaintiff's conservative treatment, finding that Plaintiff's limited course of treatment suggests his symptoms are not as intense and limiting as alleged. While the ALJ was entitled to consider the course of Plaintiff's treatment, *Prill v. Kijakazi*, 23 F.4th 738, 749 (7th Cir. 2022), he focused only on the conservative nature of the treatment rather than the consistency of the same. The ALJ noted Plaintiff was treated primarily with prescribed medication and a cooling vest, and specified there was no evidence Plaintiff requires the use of prescribed assistive devices. Beyond the mention of an assistive device, it is not clear what further treatments the ALJ would expect Plaintiff to receive. *See Rudder v. Colvin*, 2014 WL 3773565, at *12 (N.D. Ill. July 30, 2014) (finding the ALJ failed to explain how medical treatment received by the claimant with MS who did not receive medication but regularly sought medical treatment for certain conditions "was not the type of treatment one would expect from a totally disabled person.").

Further, the ALJ's reference to Plaintiff's daily activities does not support the conclusion. He pointed out that Plaintiff is able to live and function independently, provide care for his personal needs, perform household chores, drive, attend church, work part-time, and bowl in a league. Although an ALJ should consider activities, this must be "done with care." *Roddy v. Astrue*, 705 F.3d 631, 640 (7th Cir. 2013). In *Roddy*, the Seventh Circuit remarked that it has repeatedly cautioned that a person's ability to perform daily activities, especially if they can be done only with significant limitations, does not necessarily translate into an ability to work full-time. *Id.* (citations omitted). Here, with regard to the ALJ's reliance on Plaintiff's ability to live independently and work part-time, the Seventh Circuit has cautioned that "working sporadically

or performing household chores are not inconsistent with being unable to engage in substantial gainful activity." *Engstrand v. Colvin*, 788 F.3d. 655, 661 (7th Cir. 2015) (citations omitted). Indeed, in *Moore v. Colvin*, the Seventh Circuit "bemoaned" an ALJ's equation of the ability to engage in some activities with an ability to work full-time without recognizing "that full-time work does not allow for the flexibility to work around periods of incapacitation." 743 F.3d 1118, 1126 (7th Cir. 2014) (citations omitted). In this instance, the record reveals any part-time work engaged in by Plaintiff was no more than sporadic. Further, with regard to Plaintiff's ability to perform chores, drive, attend church, and bowl, the ALJ ignored Plaintiff's testimony explaining that he completed chores "slowly but surely" and completes his chores "when [he] can," taking breaks, and sometimes days in between chores (Tr. 48). Plaintiff also testified that he no longer bowls[5] and livestreams his church service (Tr. 51). The ALJ failed to consider this testimony regarding Plaintiff's daily activities and, as such, his assessment of Plaintiff's credibility was improperly analyzed and unsupported by substantial evidence.

It appears the credibility determination affected the ALJ's findings as to the extent of Plaintiff's limitations, which impacted the outcome at step five. Specifically, at the hearing, the VE was asked more restrictive hypotheticals based upon some of Plaintiff's physical complaints, which the ALJ did not ultimately adopt. Notably, the VE testified that if an individual such as Plaintiff would require additional breaks during the day that would result in approximately 20 percent off-task behavior, said breaks would not be tolerated and would soon result in termination. Because the ALJ failed to give good reasons grounded in the evidence for his decision not to credit

---

[5] In his decision, the ALJ initially noted Plaintiff stated he can no longer bowl; however, the ALJ subsequently remarked that Plaintiff reported he bowls in a league, which was seemingly taken into consideration in the ALJ's determination of Plaintiff's credibility (Tr. 20, 23).

Plaintiff's allegations, the undersigned concludes the credibility determination was erroneous and cannot be deemed harmless.

The erroneous credibility determination requires remand.  "An erroneous credibility finding requires remand unless the claimant's testimony is incredible on its face or the ALJ explains that the decision did not depend on the credibility finding."  *Pierce v. Colvin*, 739 F.3d 1046, 1051 (7th Cir. 2014).

The Court wishes to stress that this Memorandum and Order should not be construed as an indication that the Court believes Plaintiff was disabled during the relevant period or that he should be awarded benefits.  On the contrary, the Court has not formed any opinions in that regard, and leaves those issues to be determined by the Commissioner after further proceedings.

## Conclusion

The Commissioner's final decision denying Plaintiff's application for social security disability benefits is **REVERSED** and **REMANDED** to the Commissioner for rehearing and consideration of the evidence, pursuant to sentence four of 42 U.S.C. § 405(g).

The Clerk of Court is directed to enter judgment in favor of Plaintiff.

**IT IS SO ORDERED.**

**DATED: August 22, 2022**

*s/ Reona J. Daly*
**Hon. Reona J. Daly**
**United States Magistrate Judge**